Eric Bjorgum (CA Bar No. 198392)
Armand Andonian (CA Bar No. 252608)
**KARISH & BJORGUM, PC**
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
eric.bjorgum@kb-ip.com
armand.andonian@kb-ip.com

ATTORNEYS FOR PLAINTIFF
TACORI ENTERPRISES

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACORI ENTERPRISES,<br><br>                     Plaintiff,<br><br>          v.<br><br>BLUE NILE, INC.; KGK<br>JEWELLERY MANUFACTURING<br>LTD; GOLDSTAR JEWELLERY<br>LLC; and DOES 1 – 10,<br><br>                     Defendants. | Case No.: 8:22-cv-00402-JVS-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT KGK JEWELLERY MANUFACTURING LTD NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2)**<br><br>Date: February 27, 2023<br>Time: 1:30 p.m.<br>Hon. Stephen V. Wilson |

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.   PROCEDURAL HISTORY ...............................................................1

II.   INTRODUCTION .......................................................................2

III.   ARGUMENT..............................................................................3

  A.   Service was Properly Effected by Hand Delivery of the Summons and Complaint on KGK's General Manager .................................................3

  B.   Plaintiff has Pleaded Facts Showing that Jurisdiction is Proper ..................10

    1.   The Claims at issue Arise Under Federal Law...........................................11

    2.   Defendant Does Not Argue it is Subject to General Jurisdiction in another State.........................................................................................11

    3.   KGK Intentionally Directed Infringing Product into the United States Market ................................................................................12

  C.   Defendant's Rule 12(b)(6) Challenge Fails as Plaintiff has Sufficiently Alleged its Complaint for Copyright Infringement, Trademark Infringement, False Designation of Origin and Unfair Competition ..........................................15

    1.   Tacori Properly Pleaded its Claim for Copyright Infringement .................16

    2.   Tacori Properly Pleaded its Claim for Trademark Infringement and False Designation of Origin.........................................................................18

    3.   Tacori Properly Pleaded its Claim for Violation of California Bus. & Prof. Code Section 17200 ........................................................................19

IV.   CONCLUSION .........................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................... 2, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................ 2, 15

*Boisson v. Banian, Ltd.,* 273 F.3d 262, 268 (2d Cir. 2001) ..................................16

*Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) ................................10

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ..........................................................................................................................10

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) .............................................................................................................................2

*Calix Networks, Inc. v. Wi—Lan, Inc.*, No. 2010 U.S. Dist. LEXIS 97657, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) ..........................................................2

*CollegeSource, Inc.*, 653 F.3d at 1076 ...................................................................12

*Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83, 346 P.2d 409 (1959) ........4

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ...........................................................................................3

*Elohim Epf United States, Inc. v. Pondanet, Inc.* (C.D.Cal. July 24, 2019, No. 8:19-cv-00349-SVW-KES) 2019 U.S.Dist.LEXIS 209112, at *1 ...............................3

*Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013) ......................3

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).......................16

*Holland Am. Line, Inc.*, 485 F.3d at 461......................................................... 11, 12

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).................................................................................................................12

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir.), *as amended* (July 2, 2001) ...........................................................................................11

*K-Fee Sys. GmbH v. Nespresso USA, Inc.*, No. CV 22-525-GW-AGRx, at *28 (C.D.Cal. July 13, 2022)........................................................................................10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)..............18

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).................................................13

*Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) .......................12

*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003)............................2

*Lois v. Levin*, No. 2:22-cv-00926-SVW-ADS) 2022 U.S.Dist.LEXIS 155007, at *12 (C.D.Cal. Aug. 5, 2022) ...........................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).....10

*Muromura v. Rubin Postaer & Associates* ...........................................................17

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ...........................................................15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ........ .......................................................................................... 11, 13

*Sewchez Int'l v. Cit Group & Jpmorgan Chase Bank*, No. CV 07-1211-SVW (JWJx)...........................................................................................15

*Sony Pictures Entm't, Inc. v. Fireworks Entm't Grp., Inc.*, 137 F.Supp.2d 1177, 1180 (C.D.Cal. 2001) ...........................................................17

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02CV2258-B (AJB), 2005 U.S.Dist.LEXIS 55035, at *9 (S.D.Cal. Jan. 10, 2005) .............................19

*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ......................................19

*Tacori Enters. v. Beverlly Jewellery Co.*, N2008 U.S.Dist.LEXIS 127126, at *8 (C.D.Cal. Aug. 20, 2008) ...........................................................17

*Tacori Enters. v. Nerces Fine Jewelry* No. CV 12-2753 DSF (VBKx)) 2013 U.S.Dist.LEXIS 202220, at *15-16 (C.D.Cal. Sep. 20, 2013)............................18

*Tacori Enters. v. Rego Mfg.*, No. 1:05cv2241, 2008 U.S. Dist. LEXIS 73686, at *22 (N.D. Ohio Sep. 25, 2008)...........................................................16

*Tacori Enters. v. Scott Kay* ...............................................................................17

*Thomas v. Takeda Pharms. USA, Inc.*, No. 2017 U.S. Dist. LEXIS 76721, 2017

WL 2214956, at *1 (E.D. Cal. May 19, 2017) ........................................................3

*United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371,

   1382 (9th Cir. 1984) ........................................................................................3

*Washington Shoe Co.*, 704 F.3d at 672 ..................................................................12

*Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 274, 94 Cal.

   Rptr. 3d 494 (2009) ..........................................................................................4

**Other Authorities**

15 U.S.C. § 1065 .................................................................................................18

17 U.S.C. §410(c) ................................................................................................16

Cal. Corp. Code § 2110 ........................................................................................4

Fed. R. Civ. P. 4(e)(1) .........................................................................................3

Fed. R. Civ. P. 4(h)(1)(A) ...................................................................................3

Fed. R. Civ. P. 4(h)(1)(B) ...................................................................................3

Fed. R. Civ. P. 4(k)(2) .......................................................................................11

Fed. R. Civ. P. 12(b)(6) ......................................................................................16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Tacori Enterprises ("Tacori") hereby files the following Opposition to Defendant KGK Jewellery Manufacturing Ltd. ("KGK") Motion to Dismiss Complaint for Lack of Jurisdiction and Failure to State a Claim ("Motion to Dismiss").

## I.      PROCEDURAL HISTORY

Tacori filed its complaint against KGK on June 1, 2022, alleging, *inter alia*, copyright infringement, trademark infringement and unfair competition. (Dkt. 3 ("Complaint")). Default was entered by the clerk on September 8, 2022. (Dkt. 15). On December 5, 2022, this Court grated Tacori's motion for default judgment. (Dkt. 25). Subsequently, on December 19, 2022, defendant KGK moved to set aside the default judgment, which was largely supported by the sworn declaration of

Dinesh Negi. (Dkt. 27 ("Motion to Set Aside Default")). The Motion to Set Aside Default argued that "there is no question" that the Proof of Service Tacori filed with the Court was false and fraudulent. *Id.* at 8. That KGK could only "speculate as who Tacori and its process server were attempting to serve." *Id.* According to its Motion to Dismiss, as KGK has repeatedly explained to Tacori, there are entities in New York that have "KGK" in their business name. *See* Negi Decl. ¶ 10. Namely there are multiple entities registered with the New York Secretary of State at 70 West 36th Street in New York, that have "KGK" in their business name. Supposedly, these entities are subsidiaries of Delicate Exports DMCC (DE), a Dubai company, and there is no common ownership between KGK and any of these entities. *Id.*

1  These statements are doubtful and highly disturbing as they clearly

2  contradict multiple sources, including court filings in other District Courts, as well

3  as KGK and its related entities' own representations.

4

5  **II.  INTRODUCTION**

6  Defendant's motion to dismiss should be denied because service was

7  properly made on Defendant's general manager, and Defendant is subject to this

8  Court's jurisdiction. Further, the Complaint has sufficient allegations to "state a

9  claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662,

10  678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). The

11  Complaint included highly detailed facts regarding the intellectual property

12  registrations of Plaintiff Tacori Enterprises ("Tacori"), as well as the relationship

13  of the parties and side by side depictions of Tacori styles and the infringing items.

14  The pleading was sufficient to support a default judgment on the Complaint.

15  Thus, the Court should deny KGK's Motion to Dismiss or grant leave for the

16  parties to engage in jurisdictional discovery.  KGK's Motion to Set Aside Default

17  and Motion to Dismiss makes very bold allegations that the proof of service in this

18  matter is "fraudulent."  That is a ridiculous assertion when one considers that

19  Plaintiff has already resolved this issue with Defendant's customer, whose counsel

20  indicated that KGK's counsel was aware of the case.

21  Further, KGK attempts to raise issues of fact that are contradicted by

22  multiple sources. Jurisdictional discovery "should ordinarily be granted where

23  pertinent facts bearing on the question of jurisdiction are controverted or where a

24  more satisfactory showing of the facts is necessary.'" *Laub v. United States DOI*,

25  342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v.*

26  *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)); *Calix Networks, Inc. v. Wi—*

27  *Lan, Inc.*, No. 2010 U.S. Dist. LEXIS 97657, 2010 WL 3515759, at *3 (N.D. Cal.

28  Sept. 8, 2010) (quoting *Laub*, 342 F.3d at 1093)). A plaintiff need only present a

"colorable basis" for jurisdiction to obtain discovery. 2010 U.S. Dist. LEXIS 97657, [WL] at *4.

## III.   ARGUMENT

### A. Service was Properly Effected by Hand Delivery of the Summons and Complaint on KGK's General Manager

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to challenge the plaintiff's method of service. *Thomas v. Takeda Pharms. USA, Inc.*, No. 2017 U.S. Dist. LEXIS 76721, 2017 WL 2214956, at *1 (E.D. Cal. May 19, 2017). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Thomas*, 2017 U.S. Dist. LEXIS 76721, 2017 WL 2214956, at *2 (quoting *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013)); *see also Elohim Epf United States, Inc. v. Pondanet, Inc.* (C.D.Cal. July 24, 2019, No. 8:19-cv-00349-SVW-KES) 2019 U.S.Dist.LEXIS 209112, at *1.

Rule 4 is a flexible rule that should be liberally construed if the party receives sufficient notice of the complaint. *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984); *see also Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Rule 4(h) governs service on foreign corporations and allows for domestic service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a corporation may be served in the manner prescribed by Rule 4(e)(1), which governs service of individuals. Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, states that service of an individual may be effectuated by following the state law for service of summons in the state where the district court is located. Fed. R. Civ. P. 4(e)(1).

1    A foreign corporation can be served consistent with Cal. Corp. Code § 2110,

2    which treats as valid service hand delivery of the summons to, among others, "any

3    officer of the corporation or its general manager in this state." Cal. Corp. Code §

4    2110(a). The California Supreme Court has interpreted a general manager of a

5    foreign manufacturer to include a domestic distributor that is "of sufficient

6    character and rank to make it reasonably certain that the [manufacturer] will be

7    apprised of the service made." *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77,

8    83, 346 P.2d 409 (1959) (internal quotation marks and citation omitted). A

9    distributor possesses "sufficient character and rank" if it provides the manufacturer

10   with "substantially the business advantages that it would have enjoyed if it

11   conducted its business through its own offices or paid agents in the state." *Id.* at 84.

12   The essential factor in this determination is whether the distributor "perform[s]

13   services for [the foreign entity] and provid[es] it with the opportunity for regular

14   contact with its customers and a channel for a continuous flow of business into the

15   state," even though the foreign entity does not otherwise conduct business in the

16   state. *Id.* (internal quotation marks and citation omitted); *see also Yamaha Motor

17   Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 274, 94 Cal. Rptr. 3d 494

18   (2009) (explaining the crux of the test from *Cosper* as identifying factors

19   supporting the existence of "[p]robable contact between the domestic

20   representative and the foreign corporation leading to actual notification" of

21   service).

22   Here, KGK relies on what could charitably be called a "diversion"-- but is

23   more likely a false representation--of the relationship between it and its United States

24   based entity(ies).  In some instances, it may be that multiple registered entities with

25   similar names are unrelated, and some are related.  Here, however, there is no doubt.

26   Specifically, the following entities are registered with the New York Secretary of

27   State and identify 70 West 36th Street, 6th Floor, New York, New York as their

28   address for service of process: KGK Jewelry LLC, KGK Jewelry USA LLC, KGK

Jewels LLC and KGK Semi Precious Gems USA Inc. Upon information and belief these are all entities related to KGK and the "KGK Group" of entities as it self identifies.

As this Court can consider evidence outside the pleadings, a detailed review of the relevant information is helpful in shedding light on KGK's misrepresentations to Tacori, this Court, and the relationship of its related/affiliated entities in the production, sale and marketing of jewelry. To start, Dun and Bradstreet identifies Pankaj Kothari as President of KGK Jewelry LLC ("KGK Jewelry"). (Andonian Decl., Exh. 1). The Kothari family actively serves in leadership and management of the KGK Group of entities. According to its official site, the KGK Group originated in 1905 when Shri Keshrimalj Kothari began trading Burmese colored gemstones in India. (Andonian Decl., Exh. 2). Shri Ghisilal Kothari led the group's growth and expansion. *Id.* The leadership is identified as Navrattan, Sanjay, and Sandeep Kothari. *Id.* KGK Jewels LLC identifies Sandeep Chhaparwal as the agent for service of process. (Andonian Decl., Exh. 3). Sandeep Chhaparwal lists himself as CFO for KGK Creations USA and Martin Flyer Jewelry LLC ("Martin Flyer") via Linkedin. (Andonian Decl., Exh. 4). According to public sources, Martin Flyer was acquired by the KGK Group. KGK Semi Precious Gems USA Inc. identifies Yogesh Jairam Gowda as the agent for service of process. (Andonian Decl., Exh. 5). Yogesh Gowda identifies as an employee of the KGK Group via Linkedin, as the Sr. Manager- Business Development & PDD for KGK and the COO of KGK Jewels LLC. (Andonian Decl., Exh. 6). Dinesh Negi identifies as the Sr. Executive at KGK Creations Pvt. Ltd. via Linkedin. (Andonian Decl., Exh. 7).

According to the KGK Group site, their unique vertically integrated business is spread from mines-to-retail, marking their invincible presence across the pipeline of the jewellery industry, and that they are active in North America. (Andonian Decl., Exh. 2). The Hong Kong manufacturing unit produces luxury products for global markets. (Andonian Decl., Exh. 8). The group claim's to operate distribution

centres in the United States and provide a link directly below to contact "your nearest KGK office." *Id.* The link redirects to the contact page, which lists KGK in Hong Kong as well as KGK Creations USA Inc., which both share the @kgkmail.com email extension. (Andonian Decl., Exh. 9). Martin Flyer is also listed on said page. Dun and Bradstreet identifies the address for KGK Creations USA Inc. at 70 West 36th Street, Ste 6, New York, New York. (Andonian Decl., Exh. 10). Dun and Bradstreet identify Vikas Nirmal and Mahipal Singhvi as the executives, who identify as the Marketing Executive at KGK Jewelry LLC (Andonian Decl., Exh. 11) and the COO as Martin Flyer (Andonian Decl., Exh. 12), respectively.

KGK Group social media sites which are linked from its corporate site tell much the same story. For instance, Tacori's complaint alleged that KGK is a subsidiary of the multinational KGK Group headquartered in Hong Kong, with offices in New York. *See* Complaint, ¶ 6. Defendant's boldly assert unequivocally "[t]his statement is incorrect." (Dkt. 31). However, its Instagram, Twitter and YouTube pages state KGK Group is headquartered in Hong Kong and active in Asia and the Americas; its Linkedin page identifies Kowloon, Hong Kong. (Andonian Decl., Exh. 13). KGK mysteriously states the entities registered in New York with "KGK" in their business name are subsidiaries of a Dubai corporation. As declared under penalty of perjury, KGK has no subsidiaries or affiliates in the United States and there is no common ownership between KGK and any of the New York entities. (Negi Decl. ¶¶ 6, 10).

This is clearly contradicted by its own public representations.

KGK Group owned and operated media content boasts its products its products and services as in 15 countries (including the United States) with vertically and horizontally integrated supply chains from mines to retail. (Andonian Decl., Exh. 14). According to its October 1, 2021 posting, KGK Group caters to clients "in every part of the world with [its] wide network and prompt logistic solutions." *Id.* Promoting its presence worldwide with a "foothold" in thriving locations for

jewelry, including the U.S. *Id.* At the 2015 and 2016 Jewellery World Awards it was the KGK Group and its executives who accepted awards on behalf of KGK. (Andonian Decl., Exh. 15). According to its Facebook posting KGK Group's logistic distribution infrastructure extends around the world to provide global access and that it regularly exhibits at leading trade events. (Andonian Decl., Exh. 16). The 2018 Exhibitor Listing for the JCK trade show (one of the most well known jewelry shows worldwide) shows KGK International in New York, NY with the site www.kgkgroup.com. (Andonian Decl., Exh. 17).

According to the Jewelers Board of Trade ("JBT"), a not-for-profit association found in 1884 which serves the jewelry industry by providing accurate business data, KGK is a wholly owned subsidiary of KGK Group, a global corporation with locations in the United States. (Andonian Decl., Exh. 18). A separate report, confirmed by Sandeep Chhaparwal, provides that KGK Jewelry is a wholly owned subsidiary of the KGK Group and operates as a wholesaler of diamond and gemstone jewelry. (Andonian Decl., Exh. 19). The JBT report further provides sales are made to wholesalers and retailers and the majority of merchandise is imported from affiliates in India and Hong Kong. *Id.*  Tacori communicated orders for precious stones and execution of agreements related to conflict free supply of precious stones through the New York office. (Haig Tacorian Decl. ¶ 2).

Perhaps most damming are KGK Group filings in various state and federal courts. A complaint filed by KGK Jewelry in the U.S. District Court for the Southern District of New York provides it "has been manufacturing and designing jewelry for over 100 years." (Andonian Decl., Exh. 20). However, New York Secretary of State business records show KGK Jewelry initially filed for incorporation in 2004. Either KGK Jewelry is counting its corporate existence in dog years or its trading on the goodwill of the KGK Group, which trademarks and media postings claim roots in the jewelry industry in 1905. Said pleading further provides that as one part of its business, KGK Jewelry provides marketing and promotional services to retail stores,

including a virtual inventory of jewelry manufactured by KGK Jewelry. *Id.* As stated by Navrattan Kothari at the Jewellery World Awards accepting an award on behalf of KGK, "our company is a global company…our jewelry is all made in China." (This video can be found at the following link: https://www.jwawards.com/results/kgk-jewellery-manufacturing-ltd-2/) In a separate action, KGK was sued along with KGK Jewelry in the Southern District of New York. Respective counsel in that action stipulated to the acceptance of service in New York. (Andonian Decl., Exh. 21). There were no challenges to service or jurisdiction found on the docket for that proceeding. In another action, an amended complaint alleged that KGK Jewelry is a New York company comprised of members, including KGK Creations USA Inc. which was admitted. (Andonian Decl., Exh. 22). When KGK Jewelry was awarded damages in a lawsuit involving production of Ivanka Trump's branded jewelry, it was Sanjay Khotari, executive of the KGK Group who took the bows. Releasing a statement lauding the company's 110-year history and saying it could now return to supplying jewelry to the industry. (Andonian Decl., Exh. 23).

Trademark filings provide further insight. After surveillance service, the image provided by First Legal exhibits KGK Group's registered trademark on the window of the office. (Andonian Decl., Exh. 24). Service was made at 70 West 36th Street, 6th Floor, New York, NY 10018. The mark exhibited on the window is owned by KGK Diamonds (HK) Limited liability company in Hong Kong. (Andonian Decl., Exh. 25). The address of the registrant for this mark matches the address of the JBT report for KGK, as well as the address listed via the KGK Group Linkedin page. An office action issued by the U.S. Trademark Office requests a disclaimer as to "Since 1905" because it identifies the origination of the organization. This office action has screen shots of the KGK Group site from 2019, which states integration from mine to retail, headquartered in Honk Kong and active in the Americas. (Andonian Decl., Exh. 26). The mark was issued a notice of allowance and its

1  application was based, under Section 44(e), on its registration from the Government
2  of Hong Kong Special Administrative Region. (Andonian Decl., Exh. 27). KGK
3  Jewelry is the applicant and owner for the "KGK" mark, which was signed by
4  Mahipal Singhvi on July 10, 2012. (Andonian Decl., Exh. 28). The specimen
5  submitted supporting that mark is a jewelry product bag which also has the KGK
6  Established 1905 inscription. (Andonian Decl., Exh. 29). Specimens for
7  maintenance included a jewelry tray with the same Established 1905 inscription.
8  (Andonian Decl., Exh. 30). Section 8 and 15 declarations were filed by Stephen
9  Feldman of the Feldman Law Group, KGK's attorney notably not mentioned in its
10  Motion to Set Aside Default. The "KGK" mark was assigned by KGK Jewelry to its
11  Hong Kong entity (Andonian Decl., Exh. 31). The specimen used to support its
12  filings with the U.S. Trademark Office was packaging tape, which had the KGK
13  Since 1905 mark and touted its legacy of 100 years. (Andonian Decl., Exh. 32). A
14  separate trademark filing included specimens of inserts that are packaged with
15  applicant's goods, which includes promotional materials that states "KGK Group of
16  Companies" and a map of the United States shaded. (Andonian Decl., Exh. 33).

17  According to the Hong Kong General Chamber of Commerce, KGK business
18  activities identifies as "[a]ffiliated by KGK GROUP of Companies, We Manufacture
19  and Export Jewellery studded with Diamonds, Precious & Semi Precious stones to
20  JAPAN, U.S.A…"  (Andonian Decl., Exh. 34.)

21  As seen by the above, the "KGK Group" is a trademark for a collection of
22  entities that are integrated with each other in the supply chain. This integration is
23  described as both vertical and horizontal providing logistic and distribution
24  capabilities. (*see, e.g.,* Andonian Decl., Exhs. 2, 13).  Prospective clients are invited
25  to contact the U.S. offices. (*see, e.g.,* Andonian Decl., Exh. 7). The New York office
26  provides sales and support services. (*see, e.g.,* Haig Tacorian Decl. ¶ 2). It has
27  employees that identify as working for the KGK Group and employees of KGK.
28  (s*ee, e.g.,* Andonian Decl., Exhs. 1-7). Promotional pamphlets, jewelry and

9

packaging material by the U.S. entities are used to support its trademark filings. (*see, e.g.,* Andonian Decl., Exhs. 24-36). It defends lawsuits together and is headed by member(s) of the Khotari family. The group identifies these entities as subsidiaries through reporting to the trade by the JBT. (*see, e.g.,* Andonian Decl., Exh. 18.  It is a general manager of the group's entities in line with the decisions in *Casper*. First Legal records provide the managing agent was served. (Dkt. 11). Further, there is "probable contact" between the domestic representative and the foreign corporation leading to actual notification of service. *See K-Fee Sys. GmbH v. Nespresso USA, Inc.*, No. CV 22-525-GW-AGRx, at *28 (C.D.Cal. July 13, 2022). Plaintiff's counsel received a request for extension of time to answer the complaint on the day a responsive pleading was calendared, according to the docket for this action, exhibiting actual notice of the Complaint. (Dkt. 21-4).

### B. Plaintiff has Pleaded Facts Showing that Jurisdiction is Proper

Plaintiff has pleaded facts showing that jurisdiction is proper here.  Defendant KGK is a subsidiary of the multinational KGK Group which is vertically and horizontally integrated (by its own representations) in the marketing and sale of jewelry. It is a sophisticated company with subsidiaries and affiliates in the United States and active in the Americas with a "foothold" in thriving locations for jewelry (again by its own representations). Because it serves its limited purpose of securing a dismissal of Tacori's claims, KGK apparently seeks to completely dissociate itself with the KGK Group of entities. (Negi Decl. ¶ 6).  However, Plaintiff's allegations are sufficient to support personal jurisdiction.

The plaintiff must show that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Plaintiff need only make a prima facie showing of jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). To that end, "uncontroverted allegations in the complaint must be

taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When assessing whether Tacori has established a prima facie case of jurisdiction, this Court should analyze jurisdiction under Fed. R. Civ. P. 4(k)(2). *See Holland Am. Line, Inc.*, 485 F.3d at 461 ("If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir.), *as amended* (July 2, 2001)).

Rule 4(k)(2) uses virtually the same analysis as the *Calder* effects test for traditional state court personal jurisdiction, *see* 465 U.S. at 788-90, but the Court looks at the nation as a whole when reviewing contacts. Under Rule 4(k)(2), the plaintiff must prove: (1) the claim at issue arises from federal law; (2) the defendants are not subject to any state's courts of general jurisdiction; and (3) invoking jurisdiction upholds due process (namely, that jurisdiction is not unreasonable). *Pebble Beach Co.*, 453 F.3d 1151, 1159 (9th Cir. 2006). The plaintiff has the burden to show the first two prongs; the burden then shifts to the defendant to show application of jurisdiction would be unreasonable. Here, Plaintiff has made such a showing.

### 1.  The Claims at issue Arise Under Federal Law

Under Rule 4(k)(2), the claim at issue must arise from federal law in order to exercise personal jurisdiction. *AMA Multimedia*, LLC, 970 F.3d 1201,1208 (9th Cir. 2020). The first prong is met, as this action involves copyright infringement, trademark infringement and false designation of origin, which are claims under federal law, namely the Copyright Act and the Lanham Act.

### 2.  Defendant Does Not Argue it is Subject to General Jurisdiction in another State

"[A]bsent any statement from . . . [defendant] that it is subject to the courts

of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Holland Am. Line Inc.*, 485 F.3d 450, 462 (9th Cir. 2007); *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022). Defendant states it is a Hong Kong corporation and the assertion of general jurisdiction would violate due process. (Dkt. 31). Defendant does not provide it is subject to general jurisdiction in another state and thus the second prong of Rule 4(k)(2) is met.

### 3. KGK Intentionally Directed Infringing Product into the United States Market

The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the . . . [defendants] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc.*, 485 F.3d at 462 (citing *Pebble Beach Co.*, 453 F.3d at 1159). First, there must be purposeful activities or transactions with the United States, with an act that shows defendant purposefully availing itself of the privileges of doing business in the United States, and thereby invoking the benefits and protections of its laws; second, the claim must arise out of activities that are related to the United States; and third, the exercise of jurisdiction must comport with notions of fair play and substantial justice. *Washington Shoe Co.*, 704 F.3d at 672; *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). *Lang Van*, 40 F.4th at 1041.

In actions for claims such as copyright infringement, there must be "purposeful direction" under the "[*Calder*] effects test." *Axiom Foods, Inc.*, 874 F.3d at 1069 (quotation marks omitted); *Calder*, 465 U.S. at 787-89. A defendant must have committed an intentional act that is aimed at the forum, and caused harm that defendant knew would occur in the forum. *See Axiom Foods, Inc.*, 874 F.3d at 1069. Once the plaintiff has satisfied the first two prongs, the burden then shifts to the defendant to show that the jurisdiction would be unreasonable. *Washington Shoe Co.*, 704 F.3d at 672 (citing *CollegeSource, Inc.*, 653 F.3d at 1076); *see also*

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The Complaint alleged willful violation of Tacori' proprietary rights. (Complaint ¶¶ 45, 62, 74, 81). InDesign magazine named Tacori as the top two most visible jewelry brands in 2010, and in 2017, JCK magazine named Tacori as the top ten jewelry brands among affluent millennials. (Paul Tacorian Decl. ¶ 2). JCK featured Tacori on the front page of its JCK Show Daily magazine in 2018 and 2019, which was widely available to visitors and exhibitors of the JCK show (one of the largest and most prominent annual trade shows for the jewelry industry). *Id.* Upon information and belief, KGK was present for the annual JCK show for every year that Tacori has participated since at least as early as 1999. *Id.* at ¶ 3. According to Instore Magazine's annual survey of independent jewelry stores, Tacori ranks as the 18th most popular jewelry brand for 2022. *Id.* Further, KGK related entities have been a supplier of Tacori for over 18 years selling millions of dollars of diamonds to Tacori that it incorporates into its jewelry *Id.* at ¶ 4. KGK related entities' bridal brand of goods can be found in United States retail stores that also carry Tacori. *Id.* at ¶ 5. Tacori's retailers include Jared stores, which are owned and operated by Signet Jewelers. *Id.* at ¶ 6. Signet Jewelers recently acquired Blue Nile, Inc. *Id.* Tacori settled with KGK's co-defendant Blue Nile and filed a Notice of Dismissal with Prejudice on October 11, 2022. (Dkt. 17). Haig Tacorian met with Dinesh Kothari in person at Tacori's headquarters in Los Angeles. (Haig Tacorian Decl. ¶ 3). Haig Tacorian also met with Sandeep Kothari in Belgium at the KGK Group offices. *Id.* at ¶ 4. Subsequently, Haig and Paul Tacorian met with Sandeep Kothari at the JCK show in Las Vegas, Nevada. *Id.* at ¶ 5. These meetings included discussions of the jewelry industry, the parties respective businesses and how KGK Group entities could assist in Tacori's needs. *Id.* at ¶ 5. The foregoing meetings were well before the relevant dates of this action. *Id.* at ¶ 7.

Further, the infringing product was purposefully distributed to the United States. KGK supplied the infringing product to Blue Nile. It supposedly supplied these goods free on board and pointedly does not dispute the infringing goods were bound for the U.S. market. In fact, the infringing goods were prominently displayed via the Blue Nile site in U.S. dollars, with offers of free shipping in the U.S., free returns in the U.S. and reviews from U.S. consumers. (Andonian Decl., Exh. 35.) Blue Nile's corporate office and warehouse spaces are located in the West Coast in Seattle, Washington, and it has showroom locations across the United States. There were at least 527 individual units of the infringing product supplied by KGK. (Andonian Decl., Exh. 36.) According to the last available Form 10-K filing, in regards to the Blue Nile brand of jewelry, its ability to provide a high-quality customer experience is dependent, in large part, on external factors over which Blue Nile claimed to have little or no control, including, without limitation, the reliability and performance of its suppliers. (Andonian Decl., Exh. 37.)

In light of the above, there is substantial evidence of intentional direction to the United States, which supports Rule 4(k)(2) jurisdiction. KGK related entities have supplied Tacori for over a decade, and millions of dollars of product. Further, KGK Group leadership, who knew of Tacori and met with Tacori's leadership, willfully infringed its copyrighted and trademarked designs. KGK flooded the U.S. market with hundreds of individual items of infringing jewelry. Once meeting and smiling with Tacori leadership in the U.S. and internationally, just to later infringe on its intellectual property, it must now be held accountable for such actions. Plaintiff's claims would not have risen but for the distribution, marketing, the offer for sale and selling of infringing items. *See Lois v. Levin*, No. 2:22-cv-00926-SVW-ADS) 2022 U.S.Dist.LEXIS 155007, at *12 (C.D.Cal. Aug. 5, 2022)(Plaintiffs claims would not have arisen but for Defendant's contacts with the United States)). The supply of which was dependent "in large part" on the continuous flow of the infringing items from the manufacturer.

**C. Defendant's Rule 12(b)(6) Challenge Fails as Plaintiff has Sufficiently Alleged its Complaint for Copyright Infringement, Trademark Infringement, False Designation of Origin and Unfair Competition**

Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The *Twombly* Court did not seemingly evince an intent to overrule Rule 8(a)'s limited notice pleading requirements. *Sewchez Int'l v. Cit Group & Jpmorgan Chase Bank*, No. CV 07-1211-SVW (JWJx), U.S.Dist.LEXIS 117851, at *8. (C.D.Cal. July 16, 2007)(Citing *Twombly* at 1964 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). Yet, the Court now requires a plaintiff to proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* (Citing *Twombly* at 1974).

Taking all factual allegations as true, Tacori has properly pleaded its claims for copyright infringement, trademark infringement and unfair competition. While detailed factual allegations are not required, Tacori provided the following specificity: its certificates of registration and supplemental registrations from the Register of Copyrights for the crescent jewelry, trademark registrations including the detailed descriptions, its print based promotional activities, digital media advertising, access by Defendant, side by side depictions of the Tacori copyrighted styles and the items alleged to infringe, side by side images of the marks and the corresponding items alleged to infringe and unauthorized duplication. (Complaint ¶¶

15

1  12, 16, 17, 19-20, 26, 36-37, 40-41, 51-52). Thus, the Complaint provided the
2  particularity required to show a plausible claim. Indeed, the Complaint supported
3  entry of default judgment against KGK. Defendant now seeks to dismiss the claims
4  based on inapposite case law and unauthenticated and counsel's drawn depiction on
5  materials outside of the pleadings. None of this support dismissal under Fed. R. Civ.
6  P. 12(b)(6).

7  ### 1. Tacori Properly Pleaded its Claim for Copyright Infringement

8  To establish a claim for copyright infringement, a plaintiff must allege: (1)
9  ownership of a valid copyright, and (2) that the defendant copied protected aspects
10 of the work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

11 The Complaint included Tacori's certificates of copyright registrations, which
12 constitute "prima facie evidence of the validity of the copyright and of the facts
13 stated in the certificate*."* 17 U.S.C. §410(c). In addition, these registration
14 certificates establish a statutory presumption that the copyrighted works are original.
15 "Here, Tacori's registration certificate establishes a statutory presumption that the
16 HT 2229 Design is original." *Tacori Enters. v. Rego Mfg.*, No. 1:05cv2241, 2008
17 U.S. Dist. LEXIS 73686, at *22 (N.D. Ohio Sep. 25, 2008) (*Citing Boisson v.*
18 *Banian, Ltd.,* 273 F.3d 262, 268 (2d Cir. 2001) (*Holding* "Plaintiffs' certificates of
19 registration constitute prima facie evidence of the validity not only of their
20 copyrights, but also of the originality of their works."). Tacori's Complaint further
21 alleged the unauthorized advertising, sale, distribution, duplication and/or sale of
22 infringing copies of the "Tacori Crescent Jewelry," an original design comprising
23 copyrightable subject matter. (Complaint ¶ 36). Side by side images of multiple
24 Tacori styles and the infringing product were also shown. (Complaint ¶¶ 40-41).
25 Tacori thus properly articulated infringement of the protectable element of its
26 designs, namely its crescent designs which are the subject of its copyright
27 registrations. The case law cited by Defendant does not hold, as KGK seems to
28 imply, that visual depictions do not suffice to withstand a motion to dismiss under

Rule 12(b)(6). Rather, in *Muromura v. Rubin Postaer & Associates*, the court held that plaintiffs had 'put the cart" before the horse by describing elements in both works without first identifying elements worthy of protection. No. 12-9263, 2015 WL 1728324, at *8-9 (C.D. Cal. Apr. 15, 2015). There, plaintiff had attempted to lay claim to the properties of ferrofluid, an interesting substance that contains iron molecules which react to magnetic forces. Defendant does not show how this related to artistic jewelry expression that is the subject of multiple copyright registrations.

Defendant next contends Tacori is tacitly seeking to claim rights in its 'reverse crescent" design but does not cite to its quoting. There are no allegations in the complaint relating to reverse crescent designs. KGK's reliance on *Tacori Enters. v. Scott Kay* is similarly unavailing. Initially, there the court held that Tacori was likely to establish it owns a valid copyright in its reverse crescent designs. More importantly, precedent from this District provides that Tacori holds a valid copyright in HT 2229 which is one of the copyrights actually the subject in this action. *See Tacori Enters. v. Beverlly Jewellery Co.*, N2008 U.S.Dist.LEXIS 127126, at *8 (C.D.Cal. Aug. 20, 2008). As this Court's order held as to copying, Tacori adequately pled that the protectable elements of its ring design are substantially similar to Defendant's product. (Dkt. 25).

Finally, though the intrinsic test for substantial similarity is usually reserved for the trier of fact, the court may consider it at the preliminary injunction stage as it is relevant to success on the merits. *Sony Pictures Entm't, Inc. v. Fireworks Entm't Grp., Inc.*, 137 F.Supp.2d 1177, 1180 (C.D.Cal. 2001). Such was the case in *Tacori Enters. v. Scott Kay*, which considered the intrinsic test, but did not hold as Defendant's claim, there was no substantial similarity. In applying the intrinsic standard, the Court asks, "most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar." *L.A. Printex*, 676 F.3d 841, 852 (9th Cir. 2012) (citation and quotation marks omitted). This standard is applied in light of the Ninth Circuit's caution that

17

"on a summary judgment motion, a court's attempt to apply this subjective and fact-oriented standard, bypassing decision by the trier of fact, is not correct." *Id. See also Tacori Enters. v. Nerces Fine Jewelry* No. CV 12-2753 DSF (VBKx)) 2013 U.S.Dist.LEXIS 202220, at \*15-16 (C.D.Cal. Sep. 20, 2013). As the instant motion is one for failure to state a claim, and not an injunction, this Court should not bypass the trier of fact and make any findings with regards to the ordinary reasonable observer.

### 2. Tacori Properly Pleaded its Claim for Trademark Infringement and False Designation of Origin

Initially, KGK claims the Complaint seeks to allege infringement of both unregistered and registered trademarks. (Dkt. No. 31 at 12). Again, there are no citations to this unfounded conclusion. Rather, the Tacori crescent jewelry incorporates the same *distinctive design elements*, [emphasis added] referred to in the Complaint as the "Tacori Crescent Trade Dress" and the "Tacori Signature Crescent Trademark." (Complaint ¶¶ 16-17.) Copies of the Registration Certificates for Registration Nos. 3,728,425 and 5,666,5111 were attached as Exhibits B and C to the Complaint. Further, Registration No. 3,728,425 has been acknowledged as incontestable by the U.S. Patent and Trademark Office in accordance with 15 U.S.C. § 1065. Tacori's federal registration of its trade dress, length of use in the marketplace, sales and advertising demonstrates that the Tacori trade dress is distinctive and strong. *See* Complaint, *passim.* Side-by-side images of the marks and the products alleged to infringe were also detailed. (Complaint ¶¶ 51-52.) Defendant seeks to introduce materials outside the four corners of the pleadings, but such material may not, and should not, be considered by this Court. In the Ninth Circuit, the general rule is that "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court may not look beyond the four corners of a

complaint in ruling on a motion to dismiss, with the narrow exceptions of documents incorporated by reference, and any relevant matters subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Defendant provides no basis to support judicial notice of the so-called 1926 ring design, nor has Plaintiff referenced or relied on such document that it can be incorporated by reference, and thus should not be considered.

### 3.  Tacori Properly Pleaded its Claim for Violation of California Bus. & Prof. Code Section 17200

Defendant merely rehashes its baseless conclusions under the trademark infringement claims to support dismissal of violations of state law unfair competition. This is again premised on a misreading of the Complaint. There are no claim(s) regarding unregistered trademarks. Unfair trade practices is premised on Defendant's sale of infringing products in violation of Tacori's proprietary rights. (Complaint ¶ 78). Defendant provides no argument here regarding Tacori's copyright rights. Tacori is informed and believes, and on that basis alleges, that Defendant has engaged in the advertisement of infringing copies of the Tacori Crescent Jewelry. (Complaint ¶ 37). Tacori is informed and believes, and on that basis alleges, that Defendant specifically market its jewelry within this Judicial District. (Complaint at 6 ¶ 33). Tacori is informed and believes, and on that basis alleges, that Defendant actively solicits and seeks as customers, the same jewelers and retailers as Tacori. (Complaint ¶¶ 26-28). Tacori is informed and believes, and on that basis alleges, that Defendant sells their jewelry to, and actively solicit and seek as consumers, the same consumers as Tacori. (Complaint ¶¶ 1-2). Since offers to sell, false claims to ownership of a copyright, and alleged disparagement of copyrighted matter are not copyright infringement, such allegations may form the basis of an unfair business practices claim. *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02CV2258-B (AJB), 2005 U.S.Dist.LEXIS 55035, at *9 (S.D.Cal. Jan. 10, 2005).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to deny KGK's Motion to Dismiss or grant leave for the parties to engage in jurisdictional discovery as KGK's Motion to Set Aside Default and Motion to Dismiss raises issues of fact contradicted by multiple sources, its own public representations and court filings.


DATED:  February 6, 2023                    Respectfully submitted,

                                            KARISH & BJORGUM, PC


                                            By /s/ Eric Bjorgum_____
                                                Eric Bjorgum
                                                Attorneys for Plaintiff,
                                                Tacori Enterprises